# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION—FLINT

IN RE:

**CHRISTOPHER D. WYMAN**,

    *Debtor*.

Case No. 12-32264-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

**MICHAEL A. MASON**, and **BARBARA DUGGAN**,

    *Plaintiffs*,

v.

**MICHELLE PICHLER**,

    *Defendant*.

Adversary Proceeding
Case No. 12-03348-dof

**[Proposed] Order Re: Defendant Michelle Pichler's "Motion to Set Aside Default Judgment Declaring Title to Real Property for Fraud on the Court and to Dismiss Adversary Complaint with Prejudice and Award Costs and Attorney Fees"[1]**

This matter came before the Court on Defendant Michelle Pichler's "motion to set aside default judgment declaring title to real property for fraud on the court and to dismiss adversary complaint with prejudice and award costs and attorney fees," Doc 296, in which Ms. Pichler claimed that the Plaintiffs' attorney, Michael E. Tindall, perpetrated a fraud on the court. The Court, having conducted a hearing on October 11, 2017, and having reviewed the evidence, the record, the applicable law, and the submissions of the parties, makes these findings of fact and conclusions of

---

[1] This Order constitutes the findings of fact and conclusions of law of the Court under Federal Rule of Bankruptcy Procedure 7052.

law, which are in addition to the findings of fact and conclusions of law stated on the record at the October 11, 2017 hearing.

**Findings of Fact**

1. This case arises out of an adversary proceeding filed by the Plaintiffs—the Chapter 7 trustee Michael A. Mason[2] and state court judgment creditor Barbara Duggan—against Defendants Michelle Pichler and Edward Linck alleging that the Debtor Christopher D. Wyman made a preferential transfer to Ms. Pichler under 11 U.S.C. § 547, and alleging that Mr. Wyman made certain fraudulent transfers to Ms. Pichler or Mr. Linck or both in violation of 11 U.S.C. § 544 and Michigan's enactment of the Uniform Fraudulent Transfer Act,[3] Mich. Comp. Laws §§ 566.31–566.43. *See* Adv. Compl., Doc 1.

2. At all times, Michael E. Tindall (P29090) was the Plaintiffs' attorney of record.[4] *See* Am. Aff. in Supp. of Entry of Default J. ¶ 1, Doc 225.

3. On April 29, 2014, the Plaintiffs served Ms. Pichler with a subpoena to appear and testify on June 24, 2014. *See* Ex. B to Def. Michelle Pichler's Mot. to Quash

---

[2] On August 26, 2014, the United States Trustee gave notice in the main bankruptcy case of the appointment of Samuel D. Sweet as the successor trustee in this matter due to the retirement of Michael A. Mason. *See* Notice to Creditors and Other Parties in Interest of Trustee Conflict, Appointment of New Trustee, Doc 149, Case No. 12-32264-dof.

[3] Effective April 10, 2017, the Michigan Uniform Fraudulent Transfer Act was amended and renamed the Michigan Uniform Voidable Transactions Act. *See* Mich. Comp. Laws § 566.45(1).

[4] On September 21, 2017, the Attorney Discipline Board for the State of Michigan issued a Notice of Disbarment (Pending Review) disbarring Mr. Tindall from the practice of law effective September 20, 2017. *See* Notice of Disbarment (Pending Review), available at http://www.adbmich.org/coveo/notices/2017-09-21-14n-36.pdf.

Subpoena, Doc 163-1. In the subpoena, the Plaintiffs directed Ms. Pichler to bring with her "all bank statements and cancelled checks for all accounts over which [she] had signature authority, no matter the name on the account, for the years 2008 through the current date." *Id.*

4. On May 16, 2014, Defendant Pichler moved to quash the subpoena because "[t]he demand for production of documents is, in essence, an attempt by Plaintiffs to circumvent the Order regarding discovery." Def. Michelle Pichler's Mot. to Quash Subpoena, Doc 163, at p. 4.

5. On June 18, 2014, the Court held a hearing on Ms. Pichler's motion to quash. At the conclusion of the hearing, the Court made this bench ruling:

> To the extent that the subpoena requests that the defendants produce documents that fit squarely within Paragraph 9 of the final pre-trial order,[5] the Court will deny the motion to quash and direct that the defendants do exactly that if need be [sic] they need to bring those documents. I'm certain from what I understand of the case that virtually all these documents have already been produced, but if there are more documents, then so be it.

Hr'g Tr. 66:5–12, June 18, 2014, Doc 248. The Court directed Mr. Tindall to prepare an order consistent with the Court's bench ruling *See id.* at 69:16–19.

---

[5] Paragraph 9 of the final pretrial order provided in relevant part: "to the extent this Court determines that the admissions of Debtor and Defendants coupled with the attachments [Exhibit 5] to the Complaint do not establish both lack of consideration and insider status, Plaintiffs will present the account statements of Debtor's 'corporate' account at FNBH and Pichler's account(s) at TCF." Proposed Joint Final Pretrial Order ¶ 9, Doc 168, at p. 8.

6. On July 1, 2014, during a telephonic status conference, Mr. Tindall advised the Court he had not received any bank statements or documents from Defendant Pichler and requested the Court to enter a default judgment. *See* Hr'g Tr. 2:21–23, July 1, 2014, Doc 250. The Court made this bench ruling:

> With this record the Court edging ever closer to that default judgment, will indicate the following. First off, that the Court will set a deadline of July 14, 2014 at the close of business, that is 5:00 eastern daylight savings time for the documents to be delivered to Mr. Tindall.
>
> If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment.
>
> \* \* \*
>
> But with this record, Mr. Tindall has waited long enough, he's entitled to have the documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment.

*Id.* at 6:12–20, 7:6–10.

7. On July 3, 2014, Mr. Tindall filed a "notice of submission of order" regarding the July 1, 2014 bench ruling. *See* Notice of Submission of Order, Doc 212. Contrary to the Court's June 18, 2014 bench ruling, Mr. Tindall submitted an order requiring Defendant Pichler to "produce all bank records described in Plaintiffs' trial subpoena …," *id.* at p. 4, instead of just the documents in paragraph 9 of the final pretrial order, which was the Court's June 18, 2014 bench ruling. *See* June 18, 2014 Hr'g Tr. 66:5–12, Doc 248.

8. On the same day, Mr. Tindall also submitted a notice of submission of order addressing the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. *See* Notice of Submission of Order, Doc 213. The proposed order attached to the notice of submission stated the following regarding Defendant Pichler's motion to quash:

> **IT IS FURTHER ORDERED** that Defendant Pichler's MOTION TO QUASH TRIAL SUBPOENA, DE 163, is **GRANTED** in part and **DENIED** in part for the reasons stated on the record, and, Defendant Pichler shall produce all documents described in No. 9 of the FINAL PRE-TRIAL ORDER.

*Id.* at pp. 3–4. No party objected to this proposed order, but Mr. Tindall did not submit a copy for the Court to sign unlike he did with the proposed order attached to the Notice of Submission found at Docket No. 212.

9. On July 7, 2014, the Court entered the order regarding default judgment attached to the Notice of Submission found at Docket No. 212. *See* Order Re: Default J., Doc 214. This order is not consistent with the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. The order attached to the Notice of Submission of Order found at Docket No. 213 filed on July 3, 2014 is consistent with the Court's June 18, 2014 bench ruling, but Mr. Tindall did not submit it for entry for reasons unknown to the Court. The Court's June 18, 2014 bench ruling severely limited the scope of the production of documents in the trial subpoena to those documents listed in paragraph 9 of the final pre-trial order, and allowed for the

production of those documents used to refresh a witness' recollection. *See* June 18, 2014 Hr'g Tr. 66:5–67:25, Doc 248.

10. On July 14, 2014, Defendant Pichler produced all requested bank records to Mr. Tindall before the 5:00 p.m. deadline in the Court's July 7, 2014 order regarding default judgment. *See* Certificate of Service, Doc 222. Because Defendant Pichler could not find a physical address to hand-deliver the bank records to Mr. Tindall,[6] Defendant Pichler asked her former attorney Mr. Brauer[7] to email the bank records to Mr. Tindall, which he did at 1:00 p.m. *See* Certificate of Service, Doc 220; Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3. Among other documents, Mr. Brauer transmitted the following bank records to Mr. Tindall on behalf of Defendant Pichler:

- CD Wyman Contractors [CONTRACTORS 20140619130643111.pdf]
  Account Ending 1012
  June 29, 2007 through May 31, 2012 [Doc 296-6]

- Its Your Lawn Services [LawnServices.pdf]
  Account Ending 4287
  June 29, 2007 through March 31, 2009[8] [Doc 296-6]

---

[6] Mr. Tindall had only a P.O. Box listed in his filings and with the State Bar of Michigan.

[7] On July 11, 2014, the Court issued an order granting attorney David Brauer's motion to withdraw as Defendant Pichler's attorney. *See* Order for Withdrawal of Counsel, Doc 219.

[8] (1) The August 29, 2008 statement states that it is for the statement period of May 31, 2008 through August 29, 2008. (2) The December 31, 2008 statement states that it is for the statement period of October 1, 2008 through December 31, 2008. (3) The February 27, 2009 statement states that it is for the statement period of January 1, 2009 through February 27, 2009. (4) The March 31, 2009 statement is the account closing statement.

- Michelle Jean Pichler—Personal [MichellePersonal.pdf]
  Account Ending 2707
  June 19, 2007 through May 20, 2014 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 12 11 thru 2 13 MJP.pdf]
  Account Ending 5502
  December 30, 2011 through February 28, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2 13 thru 9 13 MJP.pdf]
  Account Ending 7014
  February 28, 2013 through September 30, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2014 MJP.pdf]
  Account Ending 5834
  September 30, 2013 through June 30, 2014[9] [Doc 296-6]

11. In addition, Defendant Pichler hand-delivered the requested bank records to the U.S. Post Office in Mount Clemens where Mr. Tindall maintained his post office box. *See* Certificate of Service, Doc 222. According to the receipt produced by Ms. Pichler, she "mailed" them at 1:46 p.m. from that post office to Mr. Tindall's post office box at the same post office. *See* July 14, 2014 Receipt from Mount Clemens Post Office, Doc 305-3. Ms. Pichler also purchased Signature Confirmation™ for the package. *See id.* The USPS's tracking records reflect that the post office made the package available for pickup by Mr. Tindall on July 14, 2014 at 1:49 p.m. *See* USPS Tracking Information, Doc 305-4.[10] After delivering the documents to Mr.

---

[9] (1) The March 31, 2014 statement states that it is for the statement period of January 1, 2014 through March 31, 2014. (2) The June 30, 2014 statement states that it is for the statement period of April 1, 2014 through June 30, 2014.

[10] The Court may take judicial notice of the information on a government website, because it is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Whiting v. United States*, No. CV 15-01472-AB (DTBx), 2016 WL 3946920, at *2–3 (C.D. Cal. June 21, 2016) (taking

Tindall's post office box in Mount Clemens, Ms. Pichler filed a certificate of service of the bank records at 3:41 p.m. on July 14, 2014. *See* Certificate of Service, Doc 222. The certificate of service attached the tracking number for the package, *see id*. at p. 3, which would have allowed Mr. Tindall to determine through www.usps.com that the package was available for pickup on July 14, 2014. *See* USPS Tracking Information, Doc 305-4.

12. After the 5:00 p.m. deadline on July 14, 2014, Mr. Tindall filed an "affidavit in support of entry of default judgment as provided in this Court's order DE 214." Aff. in Supp. of Entry of Default J., Doc 224. At 6:47 p.m., Mr. Tindall filed an "amended affidavit in support of entry of default judgment as provided in this Court's order DE 214." Am. Aff. in Supp. of Entry of Default J., Doc 225. Both affidavits request entry of default judgment against Defendant Pichler based on her alleged noncompliance with the Court's July 7, 2014 order regarding default judgment. In the amended affidavit, which is substantially similar to the original affidavit, Mr. Tindall made these representations to the Court to support the Plaintiffs' request for entry of default judgment against Defendant Pichler:

---

judicial notice of tracking information on U.S. Postal Service Official Tracking webpage); *Johnson v. Toys R Us, Inc.*, No. 11-1431, 2012 WL 2282218, at *3 (C.D. Ill. June 15, 2012) (taking judicial notice of tracking information on USPS website); *El-Aheidab v. Citibank (South Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at *4 n.3 (N.D. Cal. Feb. 15, 2012) (taking judicial notice of tracking information on U.S. Postal Service Track & Confirm website); *Narog v. New York Community Bank*, No. Civ. S-10-3265 JAM CKD PS, 2011 WL 4591219, at *1 n.1 (E.D. Cal. Sept. 30, 2011) (taking judicial notice of U.S. Postal Service "Track and Confirm" search results); *Perez v. Ahlstrom Corp.*, No. 10-cv-1299, 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) (taking judicial notice of receipt from the United States Postal Service's website confirming delivery date of letter).

- "He is familiar with the records, filings, pleadings and associated mailings connected with the various acts, actions and activities connected with this matter; and, as the attorney principally responsible for the matter, receives all mailings and other filings made in connection with it, on behalf of TINDALL LAW." Doc 225, at ¶ 2; *accord* Doc 224, at ¶ 2.

- "On July 14, 2014, at approximately 1PM, while absent from the office, the undersigned received – by email transmission, *See Exhibit 4* - various documents from Attorney Brauer, despite the fact that he no longer represents Pichler and has not represented her for 3 days. *See, Exhibit 3*." Doc 225, at ¶ 5; *accord* Doc 224, at ¶ 5.

- "Upon return to the office, the undersigned examined the documents transmitted. The documents transmitted DO NOT comply with the order of this Court, or, with Plaintiff's [sic] subpoena in the following material respects." Doc 225, at ¶ 6; *accord* Doc 224, at ¶ 6.

- "The documents transmitted DO NOT include Ms. Pichler's personal checking account or her personal savings account[.]" Doc 225, at ¶ 6.B; *accord* Doc 224, at ¶ 6.B.

- "Based on the statements of CD WYMAN CONTRACTORS provided, the amounts fraudulently transferred from Wyman to Pichler, *throughout* the years 2007 through 2012 is $ 105, 209.27." Doc 225, at ¶ 6.C; *accord* Doc 224, at ¶ 6.C.

- "Neither Defendant Pichler, nor attorney Brauer, have complied with the subpoena or the Order of this Court[.]" Doc 225, at ¶ 7; *accord* Doc 224, at ¶ 7.

13. On July 15, 2014, at 3:43 p.m., Mr. Tindall filed a "supplemental exhibit to amended affidavit of default DE 225." Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. In the supplemental exhibit, Mr. Tindall represented to the Court that "[o]n July 15, 2014 … a package from Michelle Pichler was received. Upon examination, the materials contained therein DO NOT comply with this Court's Order, DE 214[.]" *Id.* Mr. Tindall further represented to the Court that:

- "No cancelled checks are included for any account," *id.* at ¶ 1;

- "No cancelled checks, or images, are included for ANY other account," *id.* at ¶ 2; and

- "Random months are missing for each account included," *id.* at ¶ 3.

14. On July 16, 2014,[11] in reliance on Mr. Tindall's representations to the Court in his affidavit, Doc 224, amended affidavit, Doc 225, and supplemental exhibit, Doc 226, the Court entered a judgment declaring title to real property against Defendant Pichler. *See* J. Declaring Title to Real Property, Doc 227.

15. On August 7, 2014, the U.S. Postal Service returned the package Defendant Pichler hand-delivered to the Mount Clemens Post Office on July 14, 2014—the same package Mr. Tindall says he "received" and "examin[ed]" on July 15, 2014, *see* Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226—to Defendant Pichler as "unclaimed."[12] *See* Photograph of Unclaimed Package, Doc 305-5; *see also* USPS Tracking Information, Doc 305-4.

---

[11] Although the Court signed and filed the judgment on July 15, 2014, the Clerk entered it on the docket on July 16, 2014. *See Faragalla v. Access Receivable Mgmt. (In re Faragalla)*, 422 F.3d 1208, 1210 (10th Cir. 2005) ("The signing of the order or judgment by the judge does not constitute an 'entry' by the judge. The entry occurs when it is noted on the docket and thereby becomes pubic."); *see also In re Henry Bros. P'ship*, 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997) (discussing the meaning of "filed," "signed," and "entered").

[12] According to the Glossary of Postal Terms (Publication 32) effective July 2013, available at https://about.usps.com/publications/pub32.pdf, "unclaimed mail" means "[m]ail with or without a Special Service that is not claimed by the addressee, or mail that becomes dead at the last office of address and cannot be delivered or forwarded." *See also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/507.htm, Exhibit

**Conclusions of Law**

16. The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and E.D. Mich. LR 83.50(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (H).

17. The Court has authority to grant the relief requested under Rules 54(b) and 60(d)(3) of the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure under Rules 7054(a) and 9024, and under its inherent power under 11 U.S.C. § 105(a).

18. A judgment's freedom from fraud is a matter of "vast public importance" that "may always be the subject of further judicial inquiry." *Root Ref. Co. v. Univ. Oil Prods. Co.*, 169 F.2d 514, 522 (3d Cir. 1948). "There is an irrefragable linkage between the courts' inherent powers and the rarely-encountered problem of fraud on the court. Courts cannot lack the power to defend their integrity against unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989); *see also Halbert v. Taunt (In re M.T.G., Inc.)*, 291 B.R. 694, 700 (E.D. Mich. 2003) (quoting *Aoude* with approval).

19. "The federal courts have inherent power, independent of any authority under Rule 60(b), to vacate orders obtained by fraud upon the court, and to order other appropriate relief." *In re M.T.G., Inc.*, 366 B.R. 730, 753 (Bankr. E.D. Mich. 2007), *aff'd*, 400 B.R. 558 (E.D. Mich. 2009); *accord Chambers v. NASCO, Inc.*, 501 U.S.

---

1.4.1 (indicating that the reason for nondelivery of mail endorsed "unclaimed" is that the "[a]ddressee abandoned or failed to call for mail").

32, 44 (1991) ("the inherent power … allows a federal court to vacate its own judgment upon proof that a fraud has been practiced upon the court"). Thus,

> This Court has inherent authority, and indeed a duty, to consider whether there has been a fraud on the court, and if so, to order an appropriate remedy, whenever such a fraud comes to the Court's attention. This is so regardless of who brings it to the Court's attention, and whether the party alleging fraud on the court has clean hands or not.

*In re M.T.G., Inc.*, 366 B.R. at 754.

20. The Sixth Circuit identified the elements of fraud on the court as consisting of conduct: (1) on the part of an officer of the court; (2) that is directed to the "judicial machinery" itself; (3) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) that is a positive averment or is concealment when one is under a duty to disclose; and (5) that deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993); *accord Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009); *In re M.T.G., Inc.*, 366 B.R. at 748. Defendant Pichler must prove the existence of fraud on the court by clear and convincing evidence. *See Carter*, 585 F.3d at 1011–12.

21. Applying traditional summary judgment principles to the pending motion,[13] and based on the undisputed facts, the Court now concludes that the "Judgment Declaring Title to Real Property," Doc 227, was obtained by a fraud on the court committed by Mr. Tindall, acting as counsel for the Chapter 7 trustee and Ms.

---

[13] For a detailed discussion of these summary judgment principles, *see* Op. Re: Mots. for Summ. J., Doc 66, pp. 3–4.

Duggan. This order benefitted the Plaintiffs and was entered based on Mr. Tindall's filings. Because this judgment was obtained by fraud on the court, it will be vacated.

### A. "On the part of an officer of the court"

22. The first element to establish fraud on the court requires conduct on the part of an officer of the court. A bankruptcy trustee is an officer of the court. *In re Michelson*, 141 B.R. 715, 727 (Bankr. E.D. Cal. 1992); *see also In re M.T.G., Inc.*, 366 B.R. at 749; *In re Vazquez*, 325 B.R. 30, 38 (Bankr. S.D. Fla. 2005); *In re Vebeliunas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999). An attorney is also an officer of the court. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *Taunt v. Vining (In re M.T.G., Inc.)*, 400 B.R. 558, 566 (E.D. Mich. 2009); *Eastern Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008).

23. Misrepresentations by an attorney, made to the court, to influence the court's decision, are the very essence of fraud on the court. *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Virgin Islands Hous. Auth. v. David*, 823 F.2d 764, 767 (3d Cir. 1987); *Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 (S.D.N.Y. 1986). "As an officer of the court, every attorney has a duty to be completely honest in conducting litigation.… And when he departs from that standard in the course of a case, he perpetrates fraud upon a court." *Demjanjuk*, 10 F.3d at 352; *accord H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); *Eastern Fin. Corp.*, 258 F.R.D. at 85 ("An attorney is an officer of the court, and owes the court judiciary [sic] duties

and loyalty."); *Trehan*, 63 B.R. at 1007 n.8 ("An attorney is an officer of the court and owes the court fiduciary duties and loyalty. When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court.").

24. Here, both the trustee and Mr. Tindall are officers of the court. Because Mr. Tindall prepared, signed, and submitted the affidavits, *see* Docs 224 and 225, and the supplemental exhibit, *see* Doc 226, as attorney for the Plaintiffs, Defendant Pichler has established the first element of fraud on the court.

**B. "That is directed to the 'judicial machinery' itself"**

25. The second element is that the fraud is directed to the "judicial machinery" itself. Here, Mr. Tindall directed his fraud at the Court itself to misrepresent that Defendant Pichler failed to comply with its July 7, 2014 order, *see* Order Re: Default J., Doc 214, warranting entry of default judgment for his clients. Mr. Tindall intended his affidavits and supplemental exhibit to influence the Court's decision-making process. Mr. Tindall knew, based on the Court's statements on July 1, 2014, that the Court would enter a default judgment for Mr. Tindall's clients if he filed an affidavit stating that Defendant Pichler violated the Court's order. *See* Hr'g Tr. 6:12–13, Doc 250 ("With this record the Court edging ever closer to that default judgment"); *id.* at 6:17–20 ("If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment."); *id.* at 7:6–10 ("But with this record, Mr. Tindall has waited long enough, he's entitled to have the

documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment."). Mr. Tindall "surely understood that his actions, if successful, would improperly influence … the court," *United States v. Banum*, 32 F. Supp. 2d 642, 643 (S.D.N.Y. 1999), and "threaten to interfere with the rightful decision of the case," *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Defendant Pichler has thus established the second element of fraud on the court, because the conduct was "directed to the 'judicial machinery' itself," rather than merely directed at a private party.

### C. "That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth"

26. The third element requires that the representation be intentionally false, willfully blind to the truth, or is in reckless disregard for the truth. Here, Mr. Tindall filed two affidavits "in support of entry of default judgment as provided in this Court's Order DE 214" and a "supplemental exhibit" that represented to the Court that Mr. Tindall examined the documents produced by Defendant Pichler and determined that she violated the Court's order, Order Re: Default J., Doc 214, even though she complied. Mr. Tindall even represented to the Court that Defendant Pichler failed to produce the statements for her personal checking and savings accounts, even though exhibit 4 to his original affidavit shows otherwise.[14] *See* Ex.

---

[14] While Mr. Tindall has subsequently claimed at various times that he could not open one or more attachments to the email sent by Mr. Brauer, he never sent an email to Mr. Brauer to that effect, let alone mentioned his inability to open the documents in his affidavits, and thus should not be now heard to claim otherwise.

4 to Aff. in Supp. of Entry of Default J., Doc 224-3.

27. Further, Mr. Tindall brazenly lied to the Court in his supplemental exhibit, where he stated he reviewed the documents Defendant Pichler mailed to him even though, according to U.S. Post Office records, he never received, let alone opened, the package.[15] *See* USPS Tracking Information, Doc 305-4. In reality, the U.S. Postal Service returned the package to Defendant Pichler "unclaimed." *See* Photograph of Unclaimed Package, Doc 305-5. These material representations were intentionally false, and Mr. Tindall knowingly made them to induce the Court to enter a default judgment against Defendant Pichler.

---

[15] Given that Ms. Pichler purchased the Signature Confirmation™ service for this package, it is highly unlikely that Mr. Tindall received or reviewed the package. According to the Post Office Retail Operations Handbook (Handbook PO-209), effective October 1, 2011, available at https://www.apwu.org/sites/apwu/files/resource-files/PO-209%20Retail%20Operations%20Handbook%2010-12%20%28979%20KB%29.pdf, "Items that require a signature for delivery may not be opened or given to the recipient before the recipient signs and legibly prints his/her name on PS Form 3849, *Delivery Notice/Reminder/Receipt* (and return receipt, if applicable), and returns the receipt(s)." *Id.* at § 6-6.3, p. 26; *see also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/508.htm, 1.1.7(b) (stating that "[t]he mailpiece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee"). The tracking information produced by Defendant Pichler does not reflect that Tindall signed for, let alone received the package. "[A] presumption of regularity attaches to the actions of Government agencies," *United States Postal Service v. Gregory*, 534 U.S. 1, 10 (2001), and "[p]ostal employees are presumed to discharge their duties in a proper manner." *Charlson Realty Company v. United States*, 181 Ct. Cl. 262, 384 F.2d 434, 442 (Ct. Cl. 1967); *see also Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 37 (1891); *Boerner v. United States*, 117 F.2d 387 (2d Cir. 1941).

28. Even if not intentionally false, Mr. Tindall made these representations in reckless disregard for the truth. "In *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008), the Sixth Circuit held that an affidavit prepared by an affiant, that does not accurately reflect the facts known to him at the time the affidavit is sworn, evidences a reckless disregard for the truth." *Taunt*, 400 B.R. at 567. Here, when Mr. Tindall signed the affidavits and the supplemental exhibit, he affirmatively misrepresented Defendant Pichler's compliance with the Court's July 7, 2014 order, Order Re: Default J., Doc 214, and failed to honestly disclose what Defendant Pichler actually produced even though he claimed to have reviewed the production before filing his affidavits and supplemental exhibit. *See* Aff. in Supp. of Entry of Default J., Doc 224, at ¶ 6; Am. Aff. in Supp. of Entry of Default J., Doc 225, at ¶ 6; Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. At a minimum, Mr. Tindall acted with reckless disregard for the truth. Accordingly, Defendant Pichler has established the third element of fraud on the court

**D. "That is a positive averment or is concealment when one is under a duty to disclose"**

29. The fourth element of fraud on the court requires a positive averment or a concealment when one is under a duty to disclose. Here, Mr. Tindall made several positive averments to the Court in his affidavits, Docs 224 and 225, and the supplemental exhibit, Doc 226. These positive averments were false. Some of the positive averments were directly contradicted by exhibit 4 to the original affidavit, *see* Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3, and by the records of the U.S. Postal Service, *see* USPS Tracking Information, Doc 305-4. These filings

violated Fed. R. Civ. P. 11(b), as incorporated by Fed. R. Bankr. P. 9011,[16] and Mich. Prof'l Conduct R. 3.3,[17] as incorporated by E.D. Mich. LR 83.20(j). Mr. Tindall's "fraudulent statements to the [bankruptcy] court are particularly disturbing because he is an attorney and as such, an officer of the court obliged to act forthrightly at all times." *Southerland v. Cnty. of Oakland*, 77 F.R.D. 727, 733 (E.D. Mich. 1978), *aff'd sub nom. Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980). Accordingly, Defendant Pichler has established the fourth element of fraud on the court.

**E. "That deceives the court"**

30. The final element of fraud on the court is that the conduct actually deceived

---

[16] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[17] Mich. Prof'l Conduct R. 3.3(a) provides that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;" or "(3) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Similarly, Mich. Prof'l Conduct R. 3.3(d) provides that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts that are known to the lawyer and that will enable the tribunal to make an informed decision, whether or not the facts are adverse." *See also In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) ("The duty of candor applies not only to the duty to disclose material information related to the merits of a matter, but also to 'facts relating to the management of the case.' A failure to disclose may constitute a breach of an attorney's duty of candor."); *In re Burton*, 442 B.R. 421, 459, 460 (Bankr. W.D.N.C. 2009) ("As officers of the court, attorneys are required to act with honesty;" "[a]s any attorney knows, an affirmative statement is not necessary to create a misrepresentation. Where there is a duty to speak, silence can also be a misrepresentation.").

the court and subverted the judicial process. "In cases where a party brings a dispositive motion on an *ex parte* basis, here seeking the extraordinary relief of a default judgment, the normal benefits of the adversary system are absent and a judge must rely on the representations of parties and their counsel, serving as officers of the court." *RCI HV, Inc. v. TransTec (RC) Inc.*, No. 02-cv-4307, 2004 WL 1197246, at *12, 2004 U.S. Dist. LEXIS 9810, at *33 (S.D.N.Y. May 28, 2004). Here, the Court relied on the representations made by Mr. Tindall—as an officer of the court— that Defendant Pichler violated the Court's July 7, 2014 order requiring her to produce the bank records to Mr. Tindall by 5:00 p.m. on July 14, 2014. *See* Order Re: Default J., Doc 214. Even though Defendant Pichler complied with the Court's June 18, 2014 bench ruling and July 7, 2014 order, Mr. Tindall represented to the Court that her production did not comply. If the Court knew that Defendant Pichler produced all the TCF bank statements responsive to paragraph 9 of the final pretrial order, the Court would not have entered the requested default judgment. Accordingly, Ms. Pichler has established that Mr. Tindall committed fraud on the court by clear and convincing evidence.

## Conclusion

31. For the reasons stated above and stated on the record at the October 11, 2017 hearing, the Court concludes by clear and convincing evidence that Mr. Tindall committed a fraud on the court in obtaining the "Judgment Declaring Title to Real Property," Doc 227, and that judgment must be vacated and set aside. The Court grants the motion of Defendant Pichler to the extent of vacating the "Judgment Declaring Title to Real Property," Doc 227, and setting aside any default entered

against her. The Court will consider the appropriateness of the additional relief that Ms. Pichler sought in her motion at a later date.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the "Judgment Declaring Title to Real Property," Doc 227, is **VACATED** and **SET ASIDE** for fraud on the court by attorney Michael E. Tindall;

**IT IS FURTHER ORDERED** that Defendant Michelle Pichler's obligation to pay $225 per month to the Trustee on or before the last day of each month in accordance with the Court's September 25, 2014 "Order: (1) Granting Motion of Defendant Michelle Pichler for Stay Pending Appeal (#235) With Conditions; (2) Denying Plaintiff's Ex Parte Motion to Dissolve Motion to Stay (Docket # 239); and (3) Deeming the Court's Order to Show Cause (Docket # 275) Dissolved," Doc 301 (the "September 25, 2014 Order"), is **TERMINATED**;

**IT IS FURTHER ORDERED** that Chapter 7 trustee Samuel D. Sweet shall **ACCOUNT FOR** and **TURN OVER** all monies paid by Defendant Pichler to the Trustee under the September 25, 2014 Order to The Toll Law Firm, PLC Client Trust Account no later than 14 days after the entry of this order.

**IT IS SO ORDERED.**