UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

|  |  |
|---|---|
| CHRISTOPHER D. WYMAN, | Case No. 12-32264-dof |
| Debtor. | Chapter 7 Proceeding |
|  | Hon. Daniel S. Opperman |

_____/

MICHAEL A. MASON, U.S. Bankruptcy
Trustee, and BARBARA DUGGAN,
     Plaintiffs,

v.

MICHELLE PICHLER, a/k/a/ MICHELLE GENTRY
AND EDWARD LINCK,
     Defendants.

Adversary Proceeding
Case No. 12-03348-dof

_____/


OPINION REGARDING AMENDED CLAIMANT'S
<u>FRCP 60(b)(4) MOTION TO VACATE</u>

<u>Introduction</u>

Michael Tindall filed a Motion to Vacate the November 3, 2017 Order of this Court that

set aside a default judgment against Defendants, and asks that this Court award compensatory

sanctions of $109,000 and punitive sanctions of $327,000 against Samuel Sweet. He also asks this

Court to vacate a November 13, 2017 Amended Order to Set Aside Default (#422) and a Certificate

of Service (#425), and the March 1, 2018 Order Dismissing this Adversary Proceeding. For the

reasons stated in this Opinion, the Court denies his Motions.

1

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Findings of Fact

There were numerous discovery disputes in this action which caused the Court to enter orders compelling discovery, notably the production of documents. The Court required Ms. Pichler to produce documents to Mr. Tindall, Plaintiffs' counsel, by July 14, 2014, and if she did not do so, a default judgment would be entered against her upon the filing of an affidavit showing the lack of compliance. Mr. Tindall filed two affidavits attesting to this failure, and the Court entered a default judgment against Ms. Pichler in reliance on those affidavits.

The affidavits, however, later were demonstrated to be false. Ms. Pichler's new counsel, Kevin Toll, filed numerous pleadings with this Court and the District Court for the Eastern District of Michigan detailing the falseness of the affidavits. In particular, it was shown that Ms. Pichler had the documents emailed to Mr. Tindall and also hand delivered a box containing these documents to the post office where Mr. Tindall had a post office box. She did this because Mr. Tindall did not disclose a physical address where she could deliver the documents.

At the risk of getting ahead of the narrative, it developed that Mr. Tindall did handle the box of documents on July 14, 2014, poked a small hole in the box and concluded by seeing the amount of paper in the box that Ms. Pichler did not comply with the Court's directive. He did not review any paper and instead declined acceptance of the box, so it was returned to Ms. Pichler.[1]

---

[1] The Court has been advised that postal regulations do not allow the handling and subsequent refusal of a parcel, but these regulations were not followed in this case.

Initially, when the Court learned of Mr. Tindall's actions and subsequent affidavits, it expressed grave concerns about the situation. After Ms. Pichler filed a Motion for Indicative Ruling Regarding Motion to Set Aside Default Judgment for Fraud on the Court which Mr. Tindall responded to, the Court entered an Order on May 29, 2015:

<u>ORDER REGARDING EX-PARTE MOTION FOR INDICATIVE RULING</u>
<u>REGARDING MOTION TO SET ASIDE DEFAULT JUDGMENT FOR</u>
<u>FRAUD ON THE COURT</u>

On December 10, 2014, Defendant Michelle Pichler filed the above-titled Motion for Indicative Ruling. By way of background, on July 15, 2014, this Court entered an Order granting Plaintiff's oral Motion for Default Judgment with regard to Counts I (Preferential Transfer) and IV (Turnover pursuant to 11 U.S.C. § 542(a)) the Complaint (Docket No. 227) ("Default Judgment"). On July 28, 2014, the Defendant, Michelle Pichler ("Defendant"), filed a Notice of Appeal of the Default Judgment to the District Court. That appeal is currently pending before the Honorable Denise Page Hood, as District Court Case No. 14-13451. The Defendant filed an Ex Parte Emergency Motion for Temporary Stay Pending Appeal (Docket No. 237) on July 30, 2014, and, on the same day, this Court entered an Order granting Defendant's Ex Parte Emergency Motion for Temporary Stay Pending Appeal (Docket No. 238). In this Order, the Court ordered the Defendant to re-file a new motion for stay pending appeal on or before August 4, 2014, which Defendant did file on August 4, 2014 (Docket No. 253). On September 10, 2014, Defendant filed a Motion to Set Aside Default Judgment based on alleged fraud on the Court and to dismiss the adversary complaint with prejudice (Docket No. 296). The Defendant argued that, pursuant to Fed. R. Civ. P. 60(d)(3), the Court has an "inherent power to grant relief from a judgment which has been secured by a 'fraud on the court.'"

This Court issued its Report and Recommendation on November 17, 2014, regarding the non-core claims not subject to the Default Judgment. The Court also noted some issues with regard to the entry of the Default Judgment and questioned whether the entry of that order was appropriate. The Court noted that there were "serious concerns as to whether the actual documents that Plaintiff's counsel claimed were not produced were ever indeed requested." The Court further stated that "[u]ntil further investigation and presentation of proofs is allowed," "the likelihood of significant error in the Affidavit, Amended Affidavit, and Supplement to Affidavit exist[s] that compels this Court to recommend that further argument and evidence be introduced to address whether Defendant Pichler was in default of this Court's Order."

The instant Motion for Indicative Ruling was thereafter filed on December 10, 2014 (Docket No. 310). The Defendant requests that the Court: (1) grant her

ex-parte motion for indicative ruling; (2) issue an indicative ruling that it "would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue"; and (3) grant any other relief the Court deems necessary and appropriate. The Defendant also noted that, while perhaps it is not the proper procedure for the Defendant to have filed this ex parte motion, given the fact that Federal Rule of Bankruptcy Procedure 8008 is new, the filing of such was deemed necessary to alert the Court to the new rule and its possible application to the Defendant's Motion to Set Aside the Default Judgment.

The Plaintiff filed a Response to Defendant's Ex Parte Motion on December 11, 2014 (Docket No. 311), arguing that: (1) no valid/proper motion exists before the Court to make an indicative ruling because the Defendant did not file a motion pursuant to Federal Rule of Civil Procedure 60(b)(3)[1]; (2) by making a voluntary and deliberate choice to file an appeal to the District Court, rather than seek Rule 60(b) relief in this Court initially, the Defendant waived any right to seek Rule 60(b) relief now; and (3) the Defendant's theory of fraud on the Court is not accurate and is based solely on her own intentional misrepresentations.

On December 12, 2014, the Defendant filed a Reply to Plaintiff's Response (Docket No. 312), arguing that: (1) after filing a notice of appeal on July 30, 2014, the Defendant filed a Motion to set aside the Default Judgment based on fraud pursuant to Rule 60(d)(3); (2) the Defendant did not waive her right to file a motion pursuant to Rule 60(b)(3) simply because she appealed the ruling on the Default Judgment; (3) at the time that motion was filed, Federal Rule of Bankruptcy Procedure 8008 was not effective; (4) the Court had not ruled on that motion due to questions regarding jurisdiction, which is the very reason the new Rule 8008 was enacted; (5) although Rule 8008 does not contemplate filing a motion to request an indicative ruling, the Defendant did so on an ex parte basis to bring the new procedure to the Court's attention because her motion preceded its effective date.

Rule 8008, entitled "Indicative Rulings," states:

(a) RELIEF PENDING APPEAL. If a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the bankruptcy court may:

(1) defer considering the motion;
(2) deny the motion; or
(3) state that the court would grant the motion if the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue.

(b) NOTICE TO THE COURT WHERE THE APPEAL IS PENDING. The movant must promptly notify the clerk of the court where the

---

[1] Made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9024.

appeal is pending if the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue.

(c) REMAND AFTER AN INDICATIVE RULING. If the bankruptcy court states that it would grant the motion or that the motion raises a substantial issue, the district court or BAP may remand for further proceedings, but it retains jurisdiction unless it expressly dismisses the appeal. If the district court or BAP remands but retains jurisdiction, the parties must promptly notify the clerk of that court when the bankruptcy court has decided the motion on remand.

Rule 60 states, in part:

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

\*\*\*

(4) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

\*\*\*

(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

\*\*\*

(3) set aside a judgment for fraud on the court.

Rule 60(d)(3) provides that a judgment may be attacked for fraud on the court. "Fraud on the court consists of conduct: '1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.' " *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir.2010) (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009)). Petitioner bears the burden of proving existence of fraud upon the court by clear and convincing evidence. *Id.*

The Court expressed its reservations about the propriety of the Default Judgment in its November 17, 2014, Report and Recommendation. Accordingly, the Court concludes that, with the record before it, it is appropriate to grant the Defendant's Motion for Indicative Ruling pursuant to Rule 8008(a)(3). The Court would grant the Defendant's Motion To Set Aside Default Judgment pursuant to

5

Rule 60(b)(4) and/or (d)(3), if the United States District Court for the Eastern District of Michigan, where the appeal is pending, remands this case to this Court for that purpose.

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Indicative Ruling is GRANTED, as stated in Rule 8003 (a)(3);

IT IS FURTHER ORDERED that Defendant is to promptly notify the Clerk of the Court of the District Court of this Order pursuant to Rule 8008(b).

The Report and Recommendation referenced in the May 29, 2015 Order states in

pertinent part:

## Introduction

The Court's Report and Recommendation consists of three sections. The first section addresses the appropriateness of the Default and subsequent Default Judgment entered by the Court. The second section addresses the issue of liability regarding Counts II and V. The third section addresses the issue of the Plaintiffs' damages.

## Appropriateness of Default and Default Judgment as to Defendant, Michelle Pichler

The Default against Defendant Pichler was entered as a result of this Court's Order Regarding Default Judgment dated July 7, 2014, after a series of hearings regarding the production of documents during discovery and pursuant to a Trial Subpoena requested by the Plaintiffs. A copy of the Trial Subpoena was attached as Exhibit 2 to the Affidavit In Support of Entry of Default Judgment as Provided in this Court's Order found at Docket No. 224. The pertinent portions of this Trial Subpoena commanded Ms. Pichler to bring:

ALL BANK STATEMENTS AND CANCELLED CHECKS FOR ALL ACCOUNTS OVER WHICH YOU HAD SIGNATURE AUTHORITY, NO MATTER THE NAME ON THE ACCOUNT, FOR THE YEARS 2008 THROUGH THE CURRENT DATE.

. . .

YOU ARE ORDERED TO PRODUCE FOR INSPECTION AND COPYING:

1.      All bank statements, payment records, check registers, cancelled checks, receipts, wire transfer advice/confirmations/records, debit advice/records, receipt log

6

entries, copies of personal/certified/cashier/bank checks, promissory notes, showing:

> a.    payments made by you to or on behalf of, or, received from, by or on behalf of CHRISTOPHER WYMAN or any person or entity owned, controlled, operated or acting for him or on his behalf, whether alone or in conjunction with any other person or entity.

Defendant Pichler filed a Motion to Quash Subpoena found at Docket No. 163 on May 16, 2014. On that day, the parties also filed a Corrected Joint Final Pretrial Order at Docket No. 168 that listed the following Exhibits:

(9) Plaintiffs' Exhibits

> Quit Claim Deed recorded April 24, 2012
> Linck Discharge of Mortgage
>
> TO THE EXTENT THIS COURT DETERMINES THAT THE ADMISSIONS OF DEBTOR AND DEFENDANTS COUPLED WITH THE ATTACHMENTS [EXHIBIT 5] TO THE COMPLAINT DO NOT ESTABLISH BOTH LACK OF CONSIDERATION AND INSIDER STATUS, PLAINTIFFS WILL PRESENT THE ACCOUNT STATEMENTS OF DEBTOR'S "CORPORATE" ACCOUNT AT FNBH AND PICHLER'S ACCOUNT(S) AT TCF.

On June 18, 2014, this Court conducted a hearing regarding the Motion to Quash Subpoena. The transcript of that hearing was ordered and appears on the Court's docket at Docket No. 248. After the conclusion of oral argument, this Court ruled as follows:

> THE COURT: . . . The Court has before it two motions that are very similar in nature of the relief requested. They essentially involve the subpoenas that have been sent by plaintiffs' counsel to each defendant through counsel compelling the attendance of each defendant at a trial that's set for this - - starting this next Monday as well as for a production of a number of documents.
> Each defendant has filed this motion. It wasn't particularly clear when the motion was filed in regard to the personal attendance of Mr. Linck that there was a request to excuse his attendance as well. And even today it's not particularly clear of Mr. Linck's ability to appear here at trial.
> There's been a response filed to each motion by the plaintiffs - - plaintiffs and the Court has heard oral arguments here today. The Court also notes there's been a final pre-trial order filed in this case.

7

Reading from that final pre-trial order, the plaintiff lists the following exhibits. One, quit claim deed recorded April 24, 2012. Two, the Linck discharge of mortgage. Three, to the extent this Court determines that the admissions of debtor and the defendants coupled with the attachments Exhibit 5 to the complaint do not establish both lack of consideration and insider status.

Plaintiffs will present the account statements of debtor's corporate account at FNBH and Pichler's accounts at TCF. Continuing on, defendant's exhibits include the quit claim deed executed on October 16, 2009, the memorandum of land contract executed on May 16, 2009, mortgage executed by Pichler and Wyman and checks from Linck for the purchase and refinance of the sale of the property in question.

To the extent that the subpoena requests that the defendants produce documents that fit squarely within Paragraph 9 of the final pre-trial order, the Court will deny the motion to quash and direct that the defendants do exactly that if need be they need to bring those documents. I'm certain from what I understand of the case that virtually all these documents have already been produced, but if there are more documents, then so be it.

As to the issue of the potential that a defendant witness may testify here in Court and that testimony may be inconsistent with the testimony given a in [sic] 2004 examination, or a deposition or other sworn areas, the Court is reminded that Rule 612 allows a party to - - allows a witness to refresh his or her recollection and if that occurs then a party under sub section (b) has the option to have the writing produced at the hearing to inspect it and to cross examine the witness about it and to introduce into evidence any portion of the rights to the witness' testimony.

And now I'm reading directly from the - - the rule. "If the producing party claims the writing includes unrelated material - - I'm sorry, matter, the Court must examine the writing in camera, delete any unrelated portion and order that the rest be delivered to the adverse party. Any portion deleted or objection must be preserved for the record".

And also sub section (c), "failure to produce or deliver the writing. If a writing is not produced or is not delivered as ordered, the Court may issue an appropriate order".

. . .

The Court would caution defendants that if writings are used that have not been listed as either an exhibit for the defendant or the plaintiff and if that writing was used to refresh her recollection or memory, defendant should bring that with them so that they can have it ready when Mr. Tindall or Mr. Brauer, or Mr. Olson asks about it.

8

That they can say this is the writing. We can take a short break if need be to take a look at it and go from there.

But to go beyond the - - the final pre-trial order is inappropriate to completely grant the motion to quash runs afoul of Rule 612. So the Court will allow the subpoena to stand as to the production of documents, but limit it to basically those documents that fit under section  - - I'm sorry, Rule 612.

[Tr., Page 64, Lines 24 and 25; Page 65, Lines 1 - 25; Page 66, Lines 1 - 25; Page 67, Lines 1 - 6 and 12 - 25]

At the conclusion of this hearing, the Court directed counsel for the Plaintiffs to prepare an order consistent with the Court's Opinion. On July 3, 2014, Plaintiffs' counsel filed a Notice of Submission of Order filed at Docket No. 213. The proposed Order stated the following:

IT IS FURTHER ORDERED that Defendant Pichler's MOTION TO QUASH TRIAL SUBPOENA, DE 163, is GRANTED in part and DENIED in part for the reasons stated on the record, and, Defendant Pichler shall produce all documents described in No. 9 of the FINAL PRE-TRIAL ORDER.

No objection was filed to this Order, but Plaintiffs' counsel did not submit a copy for the Court to sign.

The parties stipulated to the entry of an Order Regarding Default Judgment that this Court signed on July 7, 2014, and was filed at Docket No. 214. Contrary to the Court's June 18, 2014, Opinion, however, the July 7, 2014, Order required Defendant Pichler to produce all bank records described in the Plaintiffs' Trial Subpoena no later than 5:00 p.m. on July 14, 2014.

Subsequently, counsel for Defendant Pichler withdrew, but from July 1, 2014, through July 14, 2014, forwarded documents in his possession to counsel for the Plaintiffs consistent with the Court's June 18, 2014, Opinion.

On July 14, 2014, counsel for the Plaintiffs filed an Affidavit in Support of Entry of Default Judgment, an Amended Affidavit in Support of Entry of Default Judgment, and a Supplemental Exhibit to Amended Affidavit filed at Docket Nos. 224, 225, and 226. The Affidavits state that Defendant Pichler failed to produce the requisite documents by the deadline set by the Court and that a Default Judgment should be entered pursuant to the July 7, 2014, Order. Accordingly, the Court entered a Judgment Declaring Title to Real Property dated July 15, 2014, filed at Docket No. 227. Additionally, Proposed Findings of Fact and Conclusions of Law were filed by the Plaintiffs on July 25, 2014, at Docket No. 228. As elaborated later in this Report and Recommendation, many of the facts found by

the Court came from the Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

Upon closer examination, this Court now has a serious concern as to whether the entry of the July 15, 2014, Default Judgment was appropriate. First, the Court notes that the July 7, 2014, Order was submitted pursuant to a document entitled "Notice of Submission of Order" that was entered by stipulation of the parties. This Order is not consistent with the June 18, 2014, Opinion of the Court. The Order attached to the Notice of Submission of Order found at Docket No. 213 filed on the same day, July 3, 2014, is consistent with the June 18, 2014, Opinion of the Court, but has not been submitted for entry for reasons unknown to this Court. The June 18, 2014, Opinion of the Court severely limited the scope of the production of documents in the Trial Subpoena to those documents listed in Paragraph 9 of the Final Pre-Trial Order, as well as allowed for the production of those documents used to refresh a witness' recollection. A closer review of the Affidavit and amendments and supplements to the Affidavits leads this Court to conclude that an unanswered issue remained as to whether Defendant Pichler had submitted the documents consistent with this Court's Opinion. Moreover, the Court would conduct a further inquiry, if allowed, as to the reason for the difference in the July 7, 2014, Order and the Court's June 18, 2014, Opinion.

Next, the Court has serious concerns as to whether the actual documents that Plaintiffs' counsel claimed were not produced were ever indeed requested. At this time, this Court is unable to determine exactly what documents were produced by Defendant Pichler and whether those documents were ever requested. Moreover, this Court is not satisfied that the Affidavit, Amended Affidavit, and Supplement to Affidavits, clearly demonstrate that Defendant Pichler failed to produce the documents that were ordered by the Court even under the more expansive July 7, 2014, Order. Until further investigation and presentation of proofs is allowed, this Court finds that the likelihood of significant error in the Affidavit, Amended Affidavit, and Supplement to Affidavit exist that compels this Court to recommend that further argument and evidence be introduced to address whether Defendant Pichler was in default of this Court's Order. Second, the Court reports and recommends to the District Court that further inquiry and investigation be made as to why the Order attached to the Notice of Presentment dated July 3, 2014, filed at Docket No. 213 was not submitted to this Court for signature.

The District Court subsequently dismissed Ms. Pichler's appeal and the Sixth Circuit Court of Appeals dismissed Plaintiffs' Appeal of Denial of Motion for Reconsideration so this case returned to this Court.

The Court held a series of status conferences and hearings, primarily directed to Ms. Pichler's requests for relief. In particular, the Court held hearings on April 26, 2017 and June 21,

2017 where all counsel and parties appeared and argued their positions. By June 2017, it was apparent that a physical examination of the postal box was necessary.

On September 20, 2017, Mr. Tindall was disbarred.

Accordingly, the Court set a status conference for October 11, 2017 and directed parties to appear. Counsel for the parties appeared, but Ms. Duggan did not. The Court was informed that Mr. Tindall was having trouble communicating with her, presumably because she needed to attend to her ailing mother. Mr. Tindall did not appear either.

On October 17, 2017, Mr. Toll produced the postal box and the Court inspected the postal box. After this inspection, the Court found and concluded that it was impossible for Mr. Tindall to have reviewed any documents in the postal box because the hole was too small and there were no other signs that the box was opened. The Court then found and concluded that the affidavits supplied by Mr. Tindall were inaccurate such that the default judgment should be set aside. As stated in an Amended Order dated November 13, 2017:

### Amended Order Re: Defendant Michelle Pichler's "Motion to Set Aside Default Judgment Declaring Title to Real Property for Fraud on the Court and to Dismiss Adversary Complaint with Prejudice and Award Costs and Attorney Fees"[1]

This matter came before the Court on Defendant Michelle Pichler's "motion to set aside default judgment declaring title to real property for fraud on the court and to dismiss adversary complaint with prejudice and award costs and attorney fees," Doc 296, in which Ms. Pichler claimed that the Plaintiffs' attorney, Michael E. Tindall, perpetrated a fraud on the court. The Court, having conducted previous hearings and conferences, as well as a hearing on October 11, 2017, and having reviewed the evidence, and in particular, having closely examined a box described in this Order which Mr. Tindall referenced in previous hearings and conferences, the record, the applicable law, and the submissions of the parties, directed Defendant's counsel to prepare and submit an Order which makes these findings of fact and conclusions of law, which are in addition to the findings of fact and conclusions of law stated on the record at the October 11, 2017 hearing.

---

[1] This Order constitutes the findings of fact and conclusions of law of the Court under Federal Rule of Bankruptcy Procedure 7052.

1. This case arises out of an adversary proceeding filed by the Plaintiffs—the Chapter 7 trustee Michael A. Mason[2] and state court judgment creditor Barbara Duggan—against Defendants Michelle Pichler and Edward Linck alleging that the Debtor Christopher D. Wyman made a preferential transfer to Ms. Pichler under 11 U.S.C. § 547, and alleging that Mr. Wyman made certain fraudulent transfers to Ms. Pichler or Mr. Linck or both in violation of 11 U.S.C. § 544 and Michigan's enactment of the Uniform Fraudulent Transfer Act,[3] Mich. Comp. Laws §§ 566.31–566.43. *See* Adv. Compl., Doc 1.

2. At all times, Michael E. Tindall (P29090) was the Plaintiffs' attorney of record.[4] *See* Am. Aff. in Supp. of Entry of Default J. ¶ 1, Doc 225.

3. On April 29, 2014, the Plaintiffs served Ms. Pichler with a subpoena to appear and testify on June 24, 2014. *See* Ex. B to Def. Michelle Pichler's Mot. to Quash Subpoena, Doc 163-1. In the subpoena, the Plaintiffs directed Ms. Pichler to bring with her "all bank statements and cancelled checks for all accounts over which [she] had signature authority, no matter the name on the account, for the years 2008 through the current date." *Id.*

4. On May 16, 2014, Defendant Pichler moved to quash the subpoena because "[t]he demand for production of documents is, in essence, an attempt by Plaintiffs to circumvent the Order regarding discovery." Def. Michelle Pichler's Mot. to Quash Subpoena, Doc 163, at p. 4.

5. On June 18, 2014, the Court held a hearing on Ms. Pichler's motion to quash. At the conclusion of the hearing, the Court made this bench ruling:

> To the extent that the subpoena requests that the defendants produce documents that fit squarely within Paragraph 9 of the final pre-trial order,[5] the Court will deny the motion to quash and direct that the

---

[2] On August 26, 2014, the United States Trustee gave notice in the main bankruptcy case of the appointment of Samuel D. Sweet as the successor trustee in this matter due to the retirement of Michael A. Mason. *See* Notice to Creditors and Other Parties in Interest of Trustee Conflict, Appointment of New Trustee, Doc 149, Case No. 12-32264-dof.

[3] Effective April 10, 2017, the Michigan Uniform Fraudulent Transfer Act was amended and renamed the Michigan Uniform Voidable Transactions Act. *See* Mich. Comp. Laws § 566.45(1).

[4] On September 21, 2017, the Attorney Discipline Board for the State of Michigan issued a Notice of Disbarment (Pending Review) disbarring Mr. Tindall from the practice of law effective September 20, 2017. *See* Notice of Disbarment (Pending Review), available at http://www.adbmich.org/coveo/notices/2017-09-21-14n36.pdf.

[5] Paragraph 9 of the final pretrial order provided in relevant part: "to the extent this Court determines that the admissions of Debtor and Defendants coupled with the attachments [Exhibit 5] to the Complaint do not establish

defendants do exactly that if need be [sic] they need to bring those documents. I'm certain from what I understand of the case that virtually all these documents have already been produced, but if there are more documents, then so be it.

Hr'g Tr. 66:5–12, June 18, 2014, Doc 248. The Court directed Mr. Tindall to prepare an order consistent with the Court's bench ruling *See id.* at 69:16–19.

6. On July 1, 2014, during a telephonic status conference, Mr. Tindall advised the Court he had not received any bank statements or documents from Defendant Pichler and requested the Court to enter a default judgment. *See* Hr'g Tr. 2:21–23, July 1, 2014, Doc 250. The Court made this bench ruling:

With this record the Court edging ever closer to that default judgment, will indicate the following. First off, that the Court will set a deadline of July 14, 2014 at the close of business, that is 5:00 eastern daylight savings time for the documents to be delivered to Mr. Tindall.

If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment.

\* \* \*

But with this record, Mr. Tindall has waited long enough, he's entitled to have the documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment.

*Id.* at 6:12–20, 7:6–10.

7. On July 3, 2014, Mr. Tindall filed a "notice of submission of order" regarding the July 1, 2014 bench ruling. *See* Notice of Submission of Order, Doc 212. Contrary to the Court's June 18, 2014 bench ruling, Mr. Tindall submitted an order requiring Defendant Pichler to "produce all bank records described in Plaintiffs' trial subpoena …," *id.* at p. 4, instead of just the documents in paragraph 9 of the final pretrial order, which was the Court's June 18, 2014 bench ruling. *See* June 18, 2014 Hr'g Tr. 66:5–12, Doc 248.

---

both lack of consideration and insider status, Plaintiffs will present the account statements of Debtor's 'corporate' account at FNBH and Pichler's account(s) at TCF." Proposed Joint Final Pretrial Order ¶ 9, Doc 168, at p. 8.

8. On the same day, Mr. Tindall also submitted a notice of submission of order addressing the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. *See* Notice of Submission of Order, Doc 213. The proposed order attached to the notice of submission stated the following regarding Defendant Pichler's motion to quash:

> **IT IS FURTHER ORDERED** that Defendant Pichler's MOTION TO QUASH TRIAL SUBPOENA, DE 163, is **GRANTED** in part and **DENIED** in part for the reasons stated on the record, and, Defendant Pichler shall produce all documents described in No. 9 of the FINAL PRE-TRIAL ORDER.

*Id.* at pp. 3–4. No party objected to this proposed order, but Mr. Tindall did not submit a copy for the Court to sign unlike he did with the proposed order attached to the Notice of Submission found at Docket No. 212.

9. On July 7, 2014, the Court entered the order regarding default judgment attached to the Notice of Submission found at Docket No. 212. *See* Order Re: Default J., Doc 214. This order is not consistent with the Court's June 18, 2014 bench ruling on Defendant Pichler's motion to quash. The order attached to the Notice of Submission of Order found at Docket No. 213 filed on July 3, 2014 is consistent with the Court's June 18, 2014 bench ruling, but Mr. Tindall did not submit it for entry for reasons unknown to the Court. The Court's June 18, 2014 bench ruling severely limited the scope of the production of documents in the trial subpoena to those documents listed in paragraph 9 of the final pre-trial order, and allowed for the production of those documents used to refresh a witness' recollection. *See* June 18, 2014 Hr'g Tr. 66:5–67:25, Doc 248.

10. On July 14, 2014, Defendant Pichler produced all requested bank records to Mr. Tindall before the 5:00 p.m. deadline in the Court's July 7, 2014 order regarding default judgment. *See* Certificate of Service, Doc 222. Because Defendant Pichler could not find a physical address to hand-deliver the bank records to Mr. Tindall,[6] Defendant Pichler asked her former attorney Mr. Brauer[7] to email the bank records to Mr. Tindall, which he did at 1:00 p.m. *See* Certificate of Service, Doc 220; Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3. Among other documents, Mr. Brauer transmitted the following bank records to Mr. Tindall on behalf of Defendant Pichler:

- CD Wyman Contractors [CONTRACTORS 20140619130643111.pdf]
  Account Ending 1012
  June 29, 2007 through May 31, 2012 [Doc 296-6]

---

[6] Mr. Tindall had only a P.O. Box listed in his filings and with the State Bar of Michigan.

[7] On July 11, 2014, the Court issued an order granting attorney David Brauer's motion to withdraw as Defendant Pichler's attorney. *See* Order for Withdrawal of Counsel, Doc 219.

- Its Your Lawn Services [LawnServices.pdf]
  Account Ending 4287
  June 29, 2007 through March 31, 2009[8] [Doc 296-6]

- Michelle Jean Pichler—Personal [MichellePersonal.pdf]
  Account Ending 2707
  June 19, 2007 through May 20, 2014 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 12 11 thru 2 13 MJP.pdf]
  Account Ending 5502
  December 30, 2011 through February 28, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2 13 thru 9 13 MJP.pdf]
  Account Ending 7014
  February 28, 2013 through September 30, 2013 [Doc 296-6]

- Michelle Jean Pichler—Savings [TCF Savings 2014 MJP.pdf]
  Account Ending 5834
  September 30, 2013 through June 30, 2014[9] [Doc 296-6]

11. In addition, Defendant Pichler hand-delivered the requested bank records to the U.S. Post Office in Mount Clemens where Mr. Tindall maintained his post office box. *See* Certificate of Service, Doc 222. According to the receipt produced by Ms. Pichler, she "mailed" them at 1:46 p.m. from that post office to Mr. Tindall's post office box at the same post office. *See* July 14, 2014 Receipt from Mount Clemens Post Office, Doc 305-3. Ms. Pichler also purchased Signature Confirmation™ for the package. *See id*. The USPS's tracking records reflect that the post office made the package available for pickup by Mr. Tindall on July 14, 2014 at 1:49 p.m. *See* USPS Tracking Information, Doc 305-4.[10] After delivering

---

[8] (1) The August 29, 2008 statement states that it is for the statement period of May 31, 2008 through August 29, 2008. (2) The December 31, 2008 statement states that it is for the statement period of October 1, 2008 through December 31, 2008. (3) The February 27, 2009 statement states that it is for the statement period of January 1, 2009 through February 27, 2009. (4) The March 31, 2009 statement is the account closing statement.

[9] (1) The March 31, 2014 statement states that it is for the statement period of January 1, 2014 through March 31, 2014. (2) The June 30, 2014 statement states that it is for the statement period of April 1, 2014 through June 30, 2014.

[10] The Court may take judicial notice of the information on a government website, because it is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Whiting v. United States*, No. CV 15- 01472-AB (DTBx), 2016 WL 3946920, at *2–3 (C.D. Cal. June 21, 2016) (taking judicial notice of tracking information on U.S. Postal Service Official Tracking webpage); *Johnson v. Toys R Us, Inc.*, No. 11-1431, 2012 WL 2282218, at *3 (C.D. Ill. June 15, 2012) (taking judicial notice of tracking information on USPS website); *El-Aheidab v. Citibank (South Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at *4 n.3 (N.D. Cal. Feb. 15, 2012) (taking judicial notice of tracking information on U.S. Postal Service Track & Confirm website); *Narog v. New York Community Bank*, No.

the documents to Mr. Tindall's post office box in Mount Clemens, Ms. Pichler filed a certificate of service of the bank records at 3:41 p.m. on July 14, 2014. See Certificate of Service, Doc 222. The certificate of service attached the tracking number for the package, *see id*. at p. 3, which would have allowed Mr. Tindall to determine through www.usps.com that the package was available for pickup on July 14, 2014. *See* USPS Tracking Information, Doc 305-4.

12. After the 5:00 p.m. deadline on July 14, 2014, Mr. Tindall filed an "affidavit in support of entry of default judgment as provided in this Court's order DE 214." Aff. in Supp. of Entry of Default J., Doc 224. At 6:47 p.m., Mr. Tindall filed an "amended affidavit in support of entry of default judgment as provided in this Court's order DE 214." Am. Aff. in Supp. of Entry of Default J., Doc 225. Both affidavits request entry of default judgment against Defendant Pichler based on her alleged noncompliance with the Court's July 7, 2014 order regarding default judgment. In the amended affidavit, which is substantially similar to the original affidavit, Mr. Tindall made these representations to the Court to support the Plaintiffs' request for entry of default judgment against Defendant Pichler:

> • "He is familiar with the records, filings, pleadings and associated mailings connected with the various acts, actions and activities connected with this matter; and, as the attorney principally responsible for the matter, receives all mailings and other filings made in connection with it, on behalf of TINDALL LAW." Doc 225, at ¶ 2; *accord* Doc 224, at ¶ 2.

> • "On July 14, 2014, at approximately 1PM, while absent from the office, the undersigned received – by email transmission, *See Exhibit 4* - various documents from Attorney Brauer, despite the fact that he no longer represents Pichler and has not represented her for 3 days. *See, Exhibit 3*." Doc 225, at ¶ 5; *accord* Doc 224, at ¶ 5.

> • "Upon return to the office, the undersigned examined the documents transmitted. The documents transmitted DO NOT comply with the order of this Court, or, with Plaintiff's [sic] subpoena in the following material respects." Doc 225, at ¶ 6; *accord* Doc 224, at ¶ 6.

> • "The documents transmitted DO NOT include Ms. Pichler's personal checking account or her personal savings account[.]" Doc 225, at ¶ 6.B; *accord* Doc 224, at ¶ 6.B.

> • "Based on the statements of CD WYMAN CONTRACTORS provided, the amounts fraudulently transferred from Wyman to Pichler, *throughout* the

---

Civ. S-10-3265 JAM CKD PS, 2011 WL 4591219, at *1 n.1 (E.D. Cal. Sept. 30, 2011) (taking judicial notice of U.S. Postal Service "Track and Confirm" search results); *Perez v. Ahlstrom Corp.*, No. 10-cv-1299, 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) (taking judicial notice of receipt from the United States Postal Service's website confirming delivery date of letter).

years 2007 through 2012 is $ 105, 209.27." Doc 225, at ¶ 6.C; *accord* Doc 224, at ¶ 6.C.

• "Neither Defendant Pichler, nor attorney Brauer, have complied with the subpoena or the Order of this Court[.]" Doc 225, at ¶ 7; *accord* Doc 224, at ¶ 7.

13. On July 15, 2014, at 3:43 p.m., Mr. Tindall filed a "supplemental exhibit to amended affidavit of default DE 225." Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. In the supplemental exhibit, Mr. Tindall represented to the Court that "[o]n July 15, 2014 … a package from Michelle Pichler was received. Upon examination, the materials contained therein DO NOT comply with this Court's Order, DE 214[.]" *Id.* Mr. Tindall further represented to the Court that:

• "No cancelled checks are included for any account," *id.* at ¶ 1;

• "No cancelled checks, or images, are included for ANY other account," *id.* at ¶ 2; and

• "Random months are missing for each account included," *id.* at ¶ 3.

14. On July 16, 2014,[11] in reliance on Mr. Tindall's representations to the Court in his affidavit, Doc 224, amended affidavit, Doc 225, and supplemental exhibit, Doc 226, the Court entered a judgment declaring title to real property against Defendant Pichler. *See* J. Declaring Title to Real Property, Doc 227.

15. On August 7, 2014, the U.S. Postal Service returned the package Defendant Pichler hand-delivered to the Mount Clemens Post Office on July 14, 2014—the same package Mr. Tindall says he "received" and "examin[ed]" on July 15, 2014, see Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226—to Defendant Pichler as "unclaimed."[12] *See* Photograph of Unclaimed Package, Doc 305-5; *see* also USPS Tracking Information, Doc 305-4.

---

[11] Although the Court signed and filed the judgment on July 15, 2014, the Clerk entered it on the docket on July 16, 2014. See *Faragalla v. Access Receivable Mgmt. (In re Faragalla)*, 422 F.3d 1208, 1210 (10th Cir. 2005) ("The signing of the order or judgment by the judge does not constitute an 'entry' by the judge. The entry occurs when it is noted on the docket and thereby becomes pubic."); *see also In re Henry Bros. P'ship*, 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997) (discussing the meaning of "filed," "signed," and "entered").

[12] According to the Glossary of Postal Terms (Publication 32) effective July 2013, available at https://about.usps.com/publications/pub32.pdf, "unclaimed mail" means "[m]ail with or without a Special Service that is not claimed by the addressee, or mail that becomes dead at the last office of address and cannot be delivered or forwarded." *See also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/507.htm, Exhibit 1.4.1 (indicating that the reason for nondelivery of mail endorsed "unclaimed" is that the "[a]ddressee abandoned or failed to call for mail").

## Conclusions of Law

16. The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and E.D. Mich. LR 83.50(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (H).

17. The Court has authority to grant the relief requested under Rules 54(b) and 60(d)(3) of the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure under Rules 7054(a) and 9024, and under its inherent power under 11 U.S.C. § 105(a).

18. A judgment's freedom from fraud is a matter of "vast public importance" that "may always be the subject of further judicial inquiry." *Root Ref. Co. v. Univ. Oil Prods. Co.*, 169 F.2d 514, 522 (3d Cir. 1948). "There is an irrefragable linkage between the courts' inherent powers and the rarely-encountered problem of fraud on the court. Courts cannot lack the power to defend their integrity against unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989); *see also Halbert v. Taunt (In re M.T.G., Inc.)*, 291 B.R. 694, 700 (E.D. Mich. 2003) (quoting *Aoude* with approval).

19. "The federal courts have inherent power, independent of any authority under Rule 60(b), to vacate orders obtained by fraud upon the court, and to order other appropriate relief." *In re M.T.G., Inc.*, 366 B.R. 730, 753 (Bankr. E.D. Mich. 2007), *aff'd*, 400 B.R. 558 (E.D. Mich. 2009); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("the inherent power … allows a federal court to vacate its own judgment upon proof that a fraud has been practiced upon the court"). Thus,

> This Court has inherent authority, and indeed a duty, to consider whether there has been a fraud on the court, and if so, to order an appropriate remedy, whenever such a fraud comes to the Court's attention. This is so regardless of who brings it to the Court's attention, and whether the party alleging fraud on the court has clean hands or not.

*In re M.T.G., Inc.*, 366 B.R. at 754.

20. The Sixth Circuit identified the elements of fraud on the court as consisting of conduct: (1) on the part of an officer of the court; (2) that is directed to the "judicial machinery" itself; (3) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; (4) that is a positive averment or is concealment when one is under a duty to disclose; and (5) that deceives the court. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993); a*ccord Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009); *In re M.T.G., Inc.*, 366 B.R. at 748. Defendant Pichler must prove the existence of fraud on the court by clear and convincing evidence. *See Carter*, 585 F.3d at 1011–12.

18

21. Applying traditional summary judgment principles to the pending motion,[13] and based on the undisputed facts, the Court now concludes that the "Judgment Declaring Title to Real Property," Doc 227, was obtained by a fraud on the court committed by Mr. Tindall, acting as counsel for the Chapter 7 trustee and Ms. Duggan. This order benefitted the Plaintiffs and was entered based on Mr. Tindall's filings. Because this judgment was obtained by fraud on the court, it will be vacated.

## A. "On the part of an officer of the court"

22. The first element to establish fraud on the court requires conduct on the part of an officer of the court. A bankruptcy trustee is an officer of the court. I*n re Michelson*, 141 B.R. 715, 727 (Bankr. E.D. Cal. 1992); *see also In re M.T.G., Inc.*, 366 B.R. at 749; *In re Vazquez*, 325 B.R. 30, 38 (Bankr. S.D. Fla. 2005); *In re Vebeliunas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999). An attorney is also an officer of the court. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *Taunt v. Vining (In re M.T.G., Inc.)*, 400 B.R. 558, 566 (E.D. Mich. 2009); *Eastern Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008).

23. Misrepresentations by an attorney, made to the court, to influence the court's decision, are the very essence of fraud on the court. *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Virgin Islands Hous. Auth. v. David*, 823 F.2d 764, 767 (3d Cir. 1987); *Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1006 (S.D.N.Y. 1986). "As an officer of the court, every attorney has a duty to be completely honest in conducting litigation.… And when he departs from that standard in the course of a case, he perpetrates fraud upon a court." *Demjanjuk*, 10 F.3d at 352; *accord H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); *Eastern Fin. Corp.*, 258 F.R.D. at 85 ("An attorney is an officer of the court, and owes the court judiciary [sic] duties and loyalty."); *Trehan*, 63 B.R. at 1007 n.8 ("An attorney is an officer of the court and owes the court fiduciary duties and loyalty. When an attorney misrepresents or omits material facts to the court, or acts on a client's perjury or distortion of evidence, his conduct may constitute a fraud on the court.").

24. Here, both the trustee and Mr. Tindall are officers of the court. Because Mr. Tindall prepared, signed, and submitted the affidavits, *see* Docs 224 and 225, and the supplemental exhibit, *see* Doc 226, as attorney for the Plaintiffs, Defendant Pichler has established the first element of fraud on the court.

---

[13] For a detailed discussion of these summary judgment principles, *see* Op. Re: Mots. for Summ. J., Doc 66, pp. 3–4.

**B. "That is directed to the 'judicial machinery' itself"**

25. The second element is that the fraud is directed to the "judicial machinery" itself. Here, Mr. Tindall directed his fraud at the Court itself to misrepresent that Defendant Pichler failed to comply with its July 7, 2014 order, *see* Order Re: Default J., Doc 214, warranting entry of default judgment for his clients. Mr. Tindall intended his affidavits and supplemental exhibit to influence the Court's decision-making process. Mr. Tindall knew, based on the Court's statements on July 1, 2014, that the Court would enter a default judgment for Mr. Tindall's clients if he filed an affidavit stating that Defendant Pichler violated the Court's order. *See* Hr'g Tr. 6:12–13, Doc 250 ("With this record the Court edging ever closer to that default judgment"); *id.* at 6:17–20 ("If those documents are not delivered to Mr. Tindall, the Court will indeed direct Mr. Tindall to one, file an affidavit indicating he has not received the documents. And two, go forward with the default judgment."); *id.* at 7:6–10 ("But with this record, Mr. Tindall has waited long enough, he's entitled to have the documents by 5:00 eastern daylight savings time on July 14, 2014. Otherwise he may submit an affidavit, add a default judgment and the Court will review the affidavit and undoubtedly sign the default judgment."). Mr. Tindall "surely understood that his actions, if successful, would improperly influence … the court," *United States v. Banum*, 32 F. Supp. 2d 642, 643 (S.D.N.Y. 1999), and "threaten to interfere with the rightful decision of the case," *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Defendant Pichler has thus established the second element of fraud on the court, because the conduct was "directed to the 'judicial machinery' itself," rather than merely directed at a private party.

**C. "That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth"**

26. The third element requires that the representation be intentionally false, willfully blind to the truth, or is in reckless disregard for the truth. Here, Mr. Tindall filed two affidavits "in support of entry of default judgment as provided in this Court's Order DE 214" and a "supplemental exhibit" that represented to the Court that Mr. Tindall examined the documents produced by Defendant Pichler and determined that she violated the Court's order, Order Re: Default J., Doc 214, even though she complied. Mr. Tindall even represented to the Court that Defendant Pichler failed to produce the statements for her personal checking and savings accounts, even though exhibit 4 to his original affidavit shows otherwise.[14] *See* Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3.

27. Further, Mr. Tindall lied to the Court in his supplemental exhibit, where he stated he reviewed the documents Defendant Pichler mailed to him even though,

---

[14] While Mr. Tindall has subsequently claimed at various times that he could not open one or more attachments to the email sent by Mr. Brauer, he never sent an email to Mr. Brauer to that effect, let alone mentioned his inability to open the documents in his affidavits, and thus should not be now heard to claim otherwise.

according to U.S. Post Office records, he never received, let alone opened, the package.[15] *See* USPS Tracking Information, Doc 305-4. In reality, the U.S. Postal Service returned the package to Defendant Pichler "unclaimed." *See* Photograph of Unclaimed Package, Doc 305-5. These material representations were intentionally false, and Mr. Tindall knowingly made them to induce the Court to enter a default judgment against Defendant Pichler.

28. Even if not intentionally false, Mr. Tindall made these representations in reckless disregard for the truth. "In *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008), the Sixth Circuit held that an affidavit prepared by an affiant, that does not accurately reflect the facts known to him at the time the affidavit is sworn, evidences a reckless disregard for the truth." *Taunt*, 400 B.R. at 567. Here, when Mr. Tindall signed the affidavits and the supplemental exhibit, he affirmatively misrepresented Defendant Pichler's compliance with the Court's July 7, 2014 order, Order Re: Default J., Doc 214, and failed to honestly disclose what Defendant Pichler actually produced even though he claimed to have reviewed the production before filing his affidavits and supplemental exhibit. *See* Aff. in Supp. of Entry of Default J., Doc 224, at ¶ 6; Am. Aff. in Supp. of Entry of Default J., Doc 225, at ¶ 6; Supplemental Ex. to Am. Aff. of Default DE 225, Doc 226. At a minimum, Mr. Tindall acted with reckless disregard for the truth. Accordingly, Defendant Pichler has established the third element of fraud on the court

### D. "That is a positive averment or is concealment when one is under a duty to disclose"

29. The fourth element of fraud on the court requires a positive averment or a concealment when one is under a duty to disclose. Here, Mr. Tindall made several positive averments to the Court in his affidavits, Docs 224 and 225, and the supplemental exhibit, Doc 226. These positive averments were false. Some of the positive averments were directly contradicted by exhibit 4 to the original affidavit, see Ex. 4 to Aff. in Supp. of Entry of Default J., Doc 224-3, and by the records of the U.S. Postal Service, *see* USPS Tracking Information, Doc 305-4. These filings

---

[15] Given that Ms. Pichler purchased the Signature Confirmation™ service for this package, it is highly unlikely that Mr. Tindall received or reviewed the package. According to the Post Office Retail Operations Handbook (Handbook PO-209), effective October 1, 2011, available a https://www.apwu.org/sites/apwu/files/resource-files/PO209%20Retail%20Operations%20Handbook%2010-12%20%28979%20KB%29.pdf, "Items that require a signature for delivery may not be opened or given to the recipient before the recipient signs and legibly prints his/her name on PS Form 3849, *Delivery Notice/Reminder/Receipt* (and return receipt, if applicable), and returns the receipt(s)." *Id.* at § 6-6.3, p. 26; *see also* Mailing Standards of the United States Postal Service, Domestic Mail Manual, available at https://pe.usps.com/Archive/HTML/DMMArchive20140728/508.htm, 1.1.7(b) (stating that "[t]he mailpiece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt (and return receipt, if applicable) and returns the receipt(s) to the USPS employee"). The tracking information produced by Defendant Pichler does not reflect that Tindall signed for, let alone received the package. "[A] presumption of regularity attaches to the actions of Government agencies," *United States Postal Service v. Gregory*, 534 U.S. 1, 10 (2001), and "[p]ostal employees are presumed to discharge their duties in a proper manner." *Charlson Realty Company v. United States*, 181 Ct. Cl. 262, 384 F.2d 434, 442 (Ct. Cl. 1967); *see also Henderson v. Carbondale Cola & Coke Co.*, 140 U.S. 25, 37 (1891); *Boerner v. United States*, 117 F.2d 387 (2d Cir. 1941).

21

violated Fed. R. Civ. P. 11(b), as incorporated by Fed. R. Bankr. P. 9011,[16] and Mich. Prof'l Conduct R. 3.3,[17] as incorporated by E.D. Mich. LR 83.20(j). Mr. Tindall's "fraudulent statements to the [bankruptcy] court are particularly disturbing because he is an attorney and as such, an officer of the court obliged to act forthrightly at all times." *Southerland v. Cnty. of Oakland*, 77 F.R.D. 727, 733 (E.D. Mich. 1978), *aff'd sub nom. Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980). Accordingly, Defendant Pichler has established the fourth element of fraud on the court.

### E. "That deceives the court"

30. The final element of fraud on the court is that the conduct actually deceived the court and subverted the judicial process. "In cases where a party brings a dispositive motion on an *ex parte* basis, here seeking the extraordinary relief of a default judgment, the normal benefits of the adversary system are absent and a judge must rely on the representations of parties and their counsel, serving as officers of the court." *RCI HV, Inc. v. TransTec (RC) Inc.*, No. 02-cv-4307, 2004 WL 1197246, at *12, 2004 U.S. Dist. LEXIS 9810, at *33 (S.D.N.Y. May 28, 2004). Here, the Court relied on the representations made by Mr. Tindall—as an officer of the court—that Defendant Pichler violated the Court's July 7, 2014 order requiring her to produce the bank records to Mr. Tindall by 5:00 p.m. on July 14, 2014. *See* Order Re: Default J., Doc 214. Even though Defendant Pichler complied with the Court's June 18, 2014 bench ruling and July 7, 2014 order, Mr. Tindall represented to the Court that her production did not comply. If the Court knew that Defendant Pichler produced all the TCF bank statements responsive to paragraph 9 of the final pretrial order, the Court would not have entered the requested default judgment. Accordingly, Ms. Pichler has established that Mr. Tindall committed fraud on the court by clear and convincing evidence.

---

[16] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[17] Mich. Prof'l Conduct R. 3.3(a) provides that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;" or "(3) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Similarly, Mich. Prof'l Conduct R. 3.3(d) provides that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts that are known to the lawyer and that will enable the tribunal to make an informed decision, whether or not the facts are adverse." *See also In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) ("The duty of candor applies not only to the duty to disclose material information related to the merits of a matter, but also to 'facts relating to the management of the case.' A failure to disclose may constitute a breach of an attorney's duty of candor."); *In re Burton*, 442 B.R. 421, 459, 460 (Bankr. W.D.N.C. 2009) ("As officers of the court, attorneys are required to act with honesty;" "[a]s any attorney knows, an affirmative statement is not necessary to create a misrepresentation. Where there is a duty to speak, silence can also be a misrepresentation.").

## Conclusion

31. For the reasons stated above and stated on the record at the October 11, 2017 hearing, the Court concludes by clear and convincing evidence that Mr. Tindall committed a fraud on the court in obtaining the "Judgment Declaring Title to Real Property," Doc 227, and that judgment must be vacated and set aside. The Court grants the motion of Defendant Pichler to the extent of vacating the "Judgment Declaring Title to Real Property," Doc 227, and setting aside any default entered against her. The Court will consider the appropriateness of the additional relief that Ms. Pichler sought in her motion at a later date.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the "Judgment Declaring Title to Real Property," Doc 227, is **VACATED** and **SET ASIDE** for fraud on the court by attorney Michael E. Tindall;

**IT IS FURTHER ORDERED** that Defendant Michelle Pichler's obligation to pay $225 per month to the Trustee on or before the last day of each month in accordance with the Court's September 25, 2014 "Order: (1) Granting Motion of Defendant Michelle Pichler for Stay Pending Appeal (#235) With Conditions; (2) Denying Plaintiff's Ex Parte Motion to Dissolve Motion to Stay (Docket # 239); and (3) Deeming the Court's Order to Show Cause (Docket # 275) Dissolved," Doc 301 (the "September 25, 2014 Order"), is **TERMINATED UNTIL FURTHER ORDER OF THE COURT.**

**IT IS SO ORDERED.**

Since Ms. Duggan did not appear on October 11, 2017, the Court held another hearing on October 31, 2017 and directed Ms. Duggan to appear. She did and advised the Court she wanted to continue this case but needed 60 days to retain an attorney. The Court granted her request and set a deadline for her to have an attorney file an appearance. An attorney did not file an appearance by the January 2, 2018 deadline agreed to by Ms. Duggan and set by the Court, so the Court set another hearing directing Ms. Duggan to appear on January 24, 2018 and explain why she had not retained an attorney. She did not appear, but the parties reported the matter as settled. That settlement required Ms. Pichler to transfer the 1011 East Jones Property to the Chapter 7 Trustee, essentially granting Plaintiffs the relief sought in the Complaint. By operation of law, Ms. Duggan's interest in this property remained and was not adversely affected.

Mr. Sweet, the Chapter 7 Trustee, found a buyer for the 1011 East Jones Property and sought approval from this Court. By that time, Ms. Duggan retained Mr. Bejjani, who did an excellent job of representing her because he negotiated a payment of $32,288.91 to Ms. Duggan, which included her original claim amount of $28,398.53 plus interest. Mr. Tindall, being dissatisfied with this result in part because he is owed attorney fees, contested all of Mr. Sweet's actions.

Mr. Tindall now requests this Court to set aside various orders in this adversary proceedings and reopen the proceedings.

<u>Applicable Authorities</u>

**Rule 60. Relief From a Judgment or Order.**

**(b) Grounds for Relief form a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

**(c) Timing and Effect of the Motion.**

**(1) *Timing*.** A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding.

**Rule 16. Pretrial Conferences; Scheduling; Management**

**(a) Purposes of a Pretrial Conference.**  In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

> (1) expediting disposition of the action;
> (2) establishing early and continuing control so that the case will not be prorated because of lack of management;
> (3) discouraging wasteful pretrial activities;
> (4) improving the quality of the trial through more thorough preparation; and
> (5) facilitating settlement.

. . .

**(c) Attendance and Matters for Consideration at a Pretrial Conference.**

> **(1)** *Attendance.*  A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference.  If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.
>
> **(2)** *Matters for Consideration.*  At any pretrial conference, the court may consider and take appropriate action on the following matters;
>> **(A)** formulating and simplifying the issues, and eliminating frivolous claims or defenses;
>> **(B)** amending the pleadings if necessary or desirable;
>> **(C)** obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;
>> **(D)** Avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702;
>> **(E)** Determining the appropriateness and timing of summary adjudication under Rule 56;
>
> . . .
>
>> **(K)** disposing of pending motions;
>
> . . .
>
>> **(P)** facilitating in other ways the just, speedy and inexpensive disposition of the action.

25

. . .

**(f) Sanctions.**

    **(1) *In General*.**  On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:

      **(A)** fails to appear at a scheduling or other pretrial conference;

**Rule 37**

  **(b) Failure to Comply with a Court Order.**

    . . .

    **(2) *Sanctions Sought in the District Where the Action is Pending*.**

      **(A)** *For Not Obeying a Discovery Order*.  If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
      . . .

          (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
          (iii) striking pleadings in whole or in party;
          (iv) staying further proceedings until the order is obeyed;
          (v) dismissing the action or proceeding in whole or in party;
          (vi) rendering a default judgment against the disobedient party;

<u>Analysis</u>

Mr. Tindall raises a variety of arguments that the entry of the November 13, 2017 Order violated due process. While true on its face that an order can be vacated for lack of due process, such is not the case here.

First, the question of whether the default judgment should be set aside was raised as early as August 2014, less than a month after the default judgment was entered. The issue percolated in this Court, the District Court, and the Sixth Circuit for years and was the detailed subject of the November 17, 2014 Report and Recommendation and the May 29, 2015 Order Regarding Defendant's Motion for Indicative Ruling. Once the issue reached this Court after appellate rights were exhausted, this Court held at least five hearings or status conferences regarding the core issue of the propriety of Mr. Tindall's affidavits and received dozens of pleadings. Mr. Tindall attended all of these Court proceedings except the last one, which he could have attended if he wanted. Mr. Tindall was afforded more than adequate due process; he is just dissatisfied with the opinions of this Court. That alone is not enough to set aside the orders as he requests and is not a basis to award any money to him.

Ms. Duggan is not entitled to relief but for different reasons. First, she received exactly what she was entitled. The amount in her proof of claim of $28,398.53 was paid, as well as interest. Plus, she was represented by counsel during all of the critical stages of these proceedings. Although her failure to retain counsel within 60 days or appear in January 2018 was noted, settlement was reached and she obtained the relief she wanted.

Rule 16 allows this Court to hold status conferences and require counsel and parties to attend. Subsection (a) directs the Court to take action that expedites disposition of an action, establish early and continuing control, and facilitate settlement. Subsection (c)(2)(A), (C), (E) and (K) allow the Court to formulate and simplify issues, obtain admissions and stipulations about

facts and documents to avoid unnecessary proof, determine the appropriateness and timing of summary adjudication, and dispose of pending motions.

All of that occurred in this proceeding, although the timespan of the case to the casual observer would suggest the Court should have taken more steps to move this case faster. The issue of whether Mr. Tindall did inspect and examine the documents that Ms. Pichler produced before he submitted his affidavits was brought to the Court's attention shortly after the default judgment was entered against her. The Court waited for the appellate process to complete, but during that time entered an indicative ruling. Once the appeals were finished, the Court held hearings and conferences to address this issue. All parties, including Mr. Tindall and Ms. Duggan, were given numerous opportunities to present their case. Under these circumstances and with this procedural history, the Court finds and concludes that adequate and robust due process was given.

Finally, the timing of Mr. Tindall's motion is telling. Rule 60(c) states such a motion must be filed within a reasonable time and for the motions based on Rule 60(b)(1), (2), and (3), no more than one year. Here, Mr. Tindall requests to set aside orders entered as early as November 2017 and as late as January 2018. He gives no reasons for this delay and has been active in related cases even after his disbarment. The Court's Orders stood unchallenged and were not appealed. In the meantime, parties relied on these Orders. Other parties such as Ms. Duggan, benefitted from these Orders in that she was paid in full. Now, over five years later, Mr. Tindall seeks to set aside and vacate these Orders. He had ample opportunity to appeal these Orders, but did not do so. The Court sees no reason for the delay and finds that his late request is untimely under Rule 60(c)(1).

<u>Conclusion</u>

For the reasons stated in this Opinion, the Court DENIES Mr. Tindall's Amended FRCP 60(b)(4) Motion to Vacate Order.

The Court will enter an Order consistent with this Opinion.

**Not for Publication**

**Signed on February 27, 2023**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**